**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

CORY R. FOUNTAIN,

                          Plaintiff,

          - v -                                    Civ. No. 8:13-CV-255
                                                        (NAM/RFT)
UNITED STATES OF AMERICA,                           [Lead Case]
UNITED STATES DEPARTMENT OF
AGRICULTURE and ANWAR M. KARIM

                          Defendants.
_____

ANWAR M. KARIM,

                          Plaintiff,

          - v -                                    Civ. No. 3:14-CV-964
                                                        (NAM/RFT)
UNITED STATES OF AMERICA and                        [Related Case]
THOMAS VILSACK as SECRETARY OF
THE UNITED STATES DEPARTMENT
OF AGRICULTURE,

                          Defendants.
_____

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## DECISION and ORDER

    Fountain commenced a personal injury action pursuant to the Federal Tort Clams Act, 28 U.S.C. § 1346(b). The genesis of this action stems from an incident that occurred on August 31, 2010, when Fountain and Karim, who was operating a vehicle owned by the United States, were involved in a two-car motor vehicle accident. *See* Civ. Case No. 8:13-CV-255, Dkt. No. 1, Compl. United States

Defendants filed an Answer with an affirmative defense that "[t]here is no subject matter jurisdiction over it because Karim was not acting within the scope of his employment." Dkt. No. 13, Defs. United States Ans. Because of this asserted affirmative defense, Karim had been representing himself *pro se* until May 7, 2014. Dkt. No. 34, Notice of Appearance. Subsequently, on August 1, 2014, Karim commenced a new action seeking a declaratory judgment against the United States alleging that he was, in fact, authorized to use the government vehicle, and consequently the Government is obligated to provide him with a defense and indemnify him from liability. Civ. Case No. 3:14-CV-964, Dkt. No. 1.

Eventually these two actions were consolidate into one. Dkt. No. 50, Dec.-Order, dated Aug. 29, 2014. Coincidentally, Karim concurrently filed an Amended Answer with a Cross-Claim and he filed a Petition, pursuant to 28 U.S.C. § 2679(d)(3), seeking a judgment and/or order certifying that he was acting within the scope of his employment at the time of the accident. Dkt. Nos. 52, Karim Am. Ans., dated Sept 10, 2014, & 55, Mot. to Pet., dated Sept. 18, 2014. The United States Defendants filed an Answer to Karim's Cross-Claim. Dkt. No. 57, Gov't Defs.' Ans., dated Sept. 22, 2014.

During a Hearing held on August 28, 2014, the Court learned that both Karim and the United States Defendants intend to file dispositive motions. Karim intends to

file a dispositive motion seeking a declaratory judgment that he is entitled to a defense provided by the United States and indemnification against any judgment that may be rendered against him in this matter, while the United States Defendants intend to file a motion for summary judgment seeking to have themselves dismissed because Karim was acting outside the scope of his employment. Obviously, these prospective dispositive motions are inextricably interconnected and, for judicial economy purposes, should be presented to the District Judge concurrently. Therefore, the August 29th Decision and Order establishes when those motions must be filed and are returnable before the Honorable Norman A. Mordue, Senior United States District Judge. Dkt. No. 50 at p 8.

The discovery deadline was extended to allow Karim an opportunity to conduct depositions. After conducting several depositions related to Karim's use of the vehicle, particularly that of Michelle DeMaio Grace, Karim seeks an additional deposition to support his Petition and prospective motion for declaratory relief. It appears that this deposition would be of an attorney who works in the United States Department of Agriculture (USDA) General Counsel's Office who may have made the decision regarding whether it would provide a legal defense to Karim. Additionally, Karim would like the production of a "timeline" created by DeMaio Grace. During the Hearing, the United States Defendants raised the specter that

DeMaio Grace's communications with anyone from USDA's General Counsel's Office would implicate the attorney-client privilege. The Court initially concluded that before it would entertain Karim's request for this final deposition, it would have to direct the United States Defendants to investigate this matter and file a status report as to its position. Dkt. No. 50 at p. 9.

On September 9, 2014, the United States Defendants filed a Status Report essentially reiterating their view that any attorney deposition of this matter would be an intrusion into attorney-client privileged communications and accordingly Karim's Request should be denied. Dkt. No. 51, Gov't Lt.-Br., dated Sept. 9, 2014.[1] In response, Karim filed a Letter-Brief laying out a factual basis as to why this deposition should be granted. Dkt. No. 58, Karim's Lt.-Br., dated Sept. 22, 2014.

Both of these recent submissions provide portions of DeMaio Grace's deposition testimony germane to this issue. Apparently on or about January 14, 2011, Ms. DeMaio Grace consulted with the USDA General Counsel's Office on behalf of Karim regarding Fountain's possible tort claim. Prior to the initiation of this action, Theresa Oderkirk conducted and prepared a fact-finding report that ultimately generated a Letter of Reprimand stating that Karim's use of the government vehicle

---

[1] In a footnote, the United States Defendants state that there is some confusion as to whether Ms. DeMaio Grace spoke with a USDA Agency Counsel or an Assistant United States Attorney in Harrisburg, Pennsylvania. Dkt. No. 51, Gov't Lt.-Br., dated Sept. 9, 2014, at p. 1 n.1.

was without authorization. Over an extended period of time, DeMaio Grace communicated with counsel regarding this issue, providing a summary of the car accident and the fact-finding report. However, it is uncertain when, if ever, the fact-finding report was transmitted to Counsel's Office. Nonetheless, Ms. DeMaio Grace testified that the decision to deny a legal defense to Karim was made by "General Counsel's Office," though the actual timing of that decision remains a mystery. *See* Dkt. Nos. 51-1 & 58 at pp. 2-3 (DeMaio Grace's deposition). Also deposed was Ms. Oderkirk, Human Resources Officer for the USDA. Her critical testimony concerned Optional Form 26, "Data Bearing Upon Scope of Employment of Motor Vehicle Operator," which seems to indicate that Karim's supervisor, Astor Boozer, authorized Karim's use of the government vehicle during the relevant period. Bewildered by Mr. Boozer's apparently inconsistent statements, Oderkirk testified that had she seen Optional Form 26 before completing her investigation, she would have arrived at a different conclusion than that reflected through her fact-finding. Dkt. No. 58 at pp. 4-6.

Based upon the testimony of these governmental witnesses, and the ostensible conflict between Oderkirk's investigative report and Optional Form 26, Karim argues that the fact-finding was "significantly flawed" and counsel's legal advice "was clearly erroneous as it was based upon incomplete and contradicting reports." *Id.* at

p. 5.  Karim further posits that Oderkirk's investigation conclusions were mistaken precisely because Optional Form 26 was not available to her prior to issuing the report and making a recommendation to reprimand Karim.  This predicament, in Karim's view, creates a material issue of fact as to whether he was indeed acting in the scope of his employment.  For these reasons, Karim seeks DeMaio Grace's timeline, if it exists, and for the United States Defendants to identify and produce the USDA General Counsel for a deposition.  *Id.*

Obviously, any inquiry into the communication between a client and an attorney inextricably invokes the attorney-client privilege.  *Coastal Gas Corp v. Dep't of Energy*, 617 F.2d 854, 862-63 (D.C. Cir. 1980).  The attorney-client privilege protects communications between governmental agencies and officials with governmental counsel if they are made for the purpose of obtaining or providing legal assistance. *Brennan Ctr. for Justice at New York Univ. Sch. of Law v. United States Dep't of Justice*, 697 F.3d 184, 207 (2d Cir. 2012) (citing *In re Cnty. of Erie*, 473 F.3d 413, 418 (2d Cir. 2007)).  But the attorney-client privilege is narrowly construed in order to achieve its purpose, especially between governmental agency and its attorneys, where it may render relevant information undiscoverable that which may be juxtaposed against the competing value of open and accessible government.  *In re Cnty. of* Erie, 473 F.3d at 418 & 419 (citing, *inter alia*, *Fisher v. United States*, 425

U.S. 391, 403 (1976)). Although legal consideration may play a role in government policymaking, *E.B. v. New York City Bd. of Educ.*, 2007 WL 2874862, at * 7 (E.D.N.Y. Jan. 11, 2012), the attorney-client privilege will still protect communications with a governmental lawyer as long as he has no policymaking authority, *Raba v. Suozzi*, 2007 WL 128817, at *2 (E.D.N.Y. Jan. 11, 2007). Hence, the predominant purpose of the communication must be to render or gain legal advice. *In re Cnty. of Erie*, 473 F.3d at 420 (cited in *NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 126 (N.D.N.Y. 2007)). The burden of proving that a communication is privileged rests with the party who invokes it. *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000).

"It is vital to a claim of privilege that the communications between client [here the government] and attorney were made in confidence and have been maintained in confidence" and the party "invoking the privilege must have taken . . . affirmative action to preserve confidentiality." *United States v. Mejia*, 655 F.3d 126, 134 (2d Cir. 2011) (quoting in part, *In re Horowitz*, 482 F.2d 72, 81-82 (2d Cir. 1973)). Stated another way, the burden rests with the agency to demonstrate that the confidentiality of the communication was expected and handled in a reasonably judicious manner. Failure to do so can create a waiver. Additionally, a waiver of this privilege can occur by implication. For example, if a client testifies concerning portions of the attorney-

client communication or when a party asserts reliance on an attorney's advice as an element of either a claim or defense, a waiver may ensue. *Brennan Ctr. for Justice*, 697 F.3d at 207-08 (citing *In re Cnty. of Erie*, 546 F.3d at 228).

Furthermore, courts have looked askance at deposing attorneys, viewing them with tremendous disfavor and discouragement. Indeed, it is greatly frowned upon and rarely justified. *United States v. Yonkers Bd. Of Educ.*, 946 F.2d 180, 185 (2d Cir. 1991). Such depositions are disruptive and fraught with peril precisely because they implicate confidential information and significantly intrude upon a privilege, which is viewed in many respects as nearly sacrosanct. A deposition of an attorney will invariably cause delay as the parties will have to grapple with what is and what is not confidential information during the deposition and the struggle to delineate between non-privileged facts and privileged communication inextricably makes the process more costly. *Niagara Mohawk v. Stone & Webster*, 125 F.R.D. 578, 593 (N.D.N.Y. 1989). Yet, there is no categorical bar to deposing attorneys, especially where the attorney is a fact witness or takes part in a significant and relevant way in pre-litigation events. *Brogan v. Northwestern Mut. Life Ins. Co.*, 152 F.R.D. 9, 14 (S.D.N.Y. 1993); *United States Fidelity & Guar. Co. v. Braspetro Oil*, 2000 WL 1253262, at *3 (S.D.N.Y Sept. 1, 2000); *Niagara Mohawk v. Stone & Webster*, 125 F.R.D. at 593, n. 4 (deposition is clearly appropriate if the attorney is a fact witness).

These events are not always so clear, but the party seeking an attorney's deposition should show that (1) no other means exist to obtain the information than to depose counsel, (2) the information sought is relevant and non-privileged, and (3) the information is crucial to the preparation of the case. *Shelton v. AMC Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). Although the Second Circuit has not expressly adopted the *Shelton* rule, it has agreed with it in principle. *United States v. Yonkers*, 946 F.2d at 185; *Gould Inc., v. Mitsui Mining & Smelt Co., LTD.*, 825 F.2d 676, 680, n. 2 (2d Cir. 1987) (dictum).

Considering all of the instructions above, a prompt decision on Karim's request for a deposition may be elusive because both parties fail to meet their respective burdens.[2] First, it is not definite whether agency counsel only gave advice or rendered the ultimate decision as to whether Karim was acting outside the scope of his employment. If he was the ultimate decision maker, counsel could very well be a fact witness as opposed to merely as a legal advisor. Thus, the Court, if not the parties, is unsure as to who may have been the ultimate decisionmaker - counsel, DeMaio Grace, or Oderkirk. Second, because there appears to be a competing set of facts as to

---

[2] Regarding the parties' respective burdens, the United States Defendants may not have established that they took affirmative measures to assure confidentiality. DeMaio Grace testified that she shared with Karim counsel's perspective on their possible defense. Either sharing the confidential communications with Karim or even testifying as to the communication could very well constitute a waive. And, Karim has not established that there are no other means to obtain the information than to depose an attorney.

whether Karim was given permission to operate the government vehicle during the relevant period, the Court acknowledges that such dispute could have a significant bearing on the United States Defendants' "lack of subject matter jurisdiction" defense. And, by pursuing a lack of subject matter jurisdiction defense the United States Defendants may very well relied on the attorney's advice to support its principal defense. The Court does not know if counsel may become a fact witness within this context, or becomes a fact witness if he was involved in significant and relevant pre-litigation events, or if DeMaio Grace's or Oderkirk's deposition testimony waived the privilege when testifying to portions of the communications with counsel.

Setting aside these unsettled questions that would have a bearing on allowing a deposition of an attorney, there is a fundamental issue to address - the timing of this deposition and which Judge makes that decision. Without exception, the scope of employment is the penultimate issue in this litigation. It is framed in the United States Defendants' affirmative defense and Karim's Cross-Claim, his separate yet related action, and his Petition for a declaratory judgment; even Fountain has a stake in the outcome of this issue. In addressing this matter, the Court has the benefit of instructions pronounced in *Griebsch v. Weaver*, 2005 WL 2260374 (N.D.N.Y. Sept. 16, 2005):

> The issue of whether Weaver [a government employee] was acting within the scope of her employment is a question for the Court to decide.

> *See Guttierez de Martinez v. Drug Enforcement Admin.,* 111 F.3d 1148, 1152-53 (4th Cir.1997); *McHugh v. Univ. of Vermont,* 966 F.2d 67 (2d Cir.1992). The Court, and not a jury, decides the factual issues necessary to make the scope of employment determination. *Guttierez de Martinez,* 111 F.3d at 1153 ("[A] plaintiff seeking relief against a federal employee is not entitled to a jury trial on the scope-of-employment issue, even if the relevant state law would provide a jury trial.... Therefore, the district court may resolve disputed issues of fact in considering a challenge to a scope-of-employment certification."); *McHugh,* 966 F.2d at 74.

*Id.* at *1.

The procedure for rendering a scope of employment determination has several critical elements: (1) the Government's certification regarding the scope of employment is *prima facie* evidence; (2) however, the district court need not defer to the certification but rather reviews the question *de novo*; (3) the parties may submit pleadings, affidavits, exhibits, and documentary evidence to either support or contradict the certification; (3) the court may conduct an evidentiary hearing on the matter if there is a material dispute as to the facts; and (4) if there is a genuine issue of fact material to the scope of employment decision, the court may allow any needed discovery. *Guittierez de Martinez*, 111 F.3d at 1153-55 (quoted in *Griebsch v. Weaver*, 2005 WL 2260374, at *2). There is a "desirability of quickly resolving the scope-of-employment issue," requiring the district court to "ensure that both the discovery and [any evidentiary hearing] are circumscribed as narrowly as possible[.]" *Id.* at 1154.[3]

---

[3] The desirability for a quick resolution of this issue may have eluded the litigants because Karim was proceeding *pro se* and was unfamiliar with the petition process pursuant to 28 U.S.C. §

(continued...)

-11-

Since the requested additional deposition pertains solely to the scope of employment, and following the instructions of *Guittierez de Martinez*, another deposition would have to await a determination that an issue of material fact is present. Determining the scope of employment here is a dispositive decision which rests solely with a District Judge as opposed to a Magistrate Judge. Those issues will soon be presented to Judge Mordue. *See* Dkt. No. 50. Because the courts are to "circumscribe as narrowly as possible" discovery on the issue, the decision to grant yet another deposition may have shifted away from this Court to the District Judge. Since formal discovery is closed, and abiding by the directions of *Guittierez de Martinez*, the Court concludes that allowing further limited discovery, which may include one more deposition, consequently now resides with the District Judge.

The Court denies Karim's application as premature and outside the Court's province to grant at this time. Because DeMaio Grace's timeline was a topic of interest during her deposition, the United State Defendants shall produce. If it does not exist, the United States Defendants shall so advise Karim.

---

[3](...continued)
2679(d)(3), and the United States Defendants decided to fully engage in discovery before filing a dispositive motion on their certification.

**IT IS SO ORDERED**.

September 30, 2014
Albany, New York

Randolph F. Treece
U.S. Magistrate Judge